# EXHIBIT J

## Page 2

```
 1  APPEARANCES OF COUNSEL:
 2  For the Receiver Susan Uecker:
 3       WILLIAM HUCKINS, Esq.
         Allen, Matkins, Leck, Gamble, Mallory & Natsis
 4       Three Embarcadero Center, 12th Floor
         San Francisco, California 94111
 5       (415)837-1515
         whuckins@allenmatkins.com
 6
    For the Plaintiff Allan Young:
 7
         JONATHAN K. LEVINE, Esq.
 8       ELIZABETH C. PRITZKER, Esq.
         Pritzker Levine LLP
 9       180 Grand Avenue, Suite 1390
         Oakland, California 94612
10       (510)415)692-0772
         jkl@pritzkerlevine.com
11       ecp@pritzkerlevine.com
12  For the Defendants SFRC; and Henderson Defendants:
13       LEEDS DISSTON, Esq.
         Casalina Disston
14       409 13th Street, 9th Floor
         Oakland, California 94612
15       (510)835-8110
         casdiss@yahoo.com
16
    Also Present:
17
         Susan Uecker, Receiver
18
19
20
21
22
23
24
25
```

## Page 3

```
 1              P R O C E E D I N G S
 2          Thursday, May 5, 2016 - 3:20 p.m.
 3                    ---oOo---
 4       THE COURT:  What I'd like to do on the Young
 5  versus Henderson matter is I spent my evening going
 6  through all of the documents that had been presented
 7  thus far to put them into a format that at least I
 8  could better understand.
 9       This may make it more difficult for all of you,
10  but at least it's so I can better understand it.  So
11  we're going to distribute it to you and give you some
12  time to look at it, and then I want to talk about it.
13  Before we do that, we will address the motion that
14  brought you here today because it may determine how we
15  proceed.
16       So let me just get that off of my desk.  I'm
17  going to give you some time to look at all those and
18  take a break to give you time to do that's correct, but
19  before you do spend a lot of time doing it, I feel
20  obliged to address the receiver's ex parte, was it,
21  application for an order authorizing employment and
22  compensation of counsel.
23       You're all welcome to be seated, and then I'm
24  going to have you kindly state your appearances for the
25  record, and I appreciate seeing the court reporter
```

## Page 4

```
 1  here.
 2       MR. HUCKINS:  Bill Huckins from Allen Matkins
 3  on behalf of the receiver, Susan Uecker.  Ms. Uecker is
 4  in the courtroom as well.
 5       MR. LEVINE:  Jonathan Levine for the plaintiff.
 6       MS. PRITZKER:  Elizabeth Pritzker for the
 7  plaintiff.
 8       MR. DISSTON:  Leeds Disston for San Francisco
 9  Regional Center and the Henderson defendants.
10       THE COURT:  Okay.  Thank you.  I'm going to
11  give you my tentative ruling, and then I'll allow you
12  to respond.  I made this ruling after I put together
13  all these documents.
14       I put these documents together, honestly, by
15  going through the declarations of the receiver that was
16  filed on April the 6th, I think it was, Ms. Baptiste
17  Shepard on April 19th and one from Mr. Henderson on
18  April 22nd that I found very helpful.
19       And honestly, what I had to do was cut and
20  paste them and sort of try to figure out for myself
21  what was lining up under CallSocket I, CallSocket II,
22  CallSocket III and get a handle on, honestly, just how
23  dire the situation appears to be.  Having what felt to
24  me like a fuller understanding of the serious economic
25  situation that at least these three entities find
```

## Page 5

```
 1  themselves in, I then found myself in a very hard place
 2  because.
 3       And I'll just -- I am going to -- the tentative
 4  ruling is, I will approve the receiver's request to
 5  employ legal counsel to provide legal advice to her
 6  with respect to the lawful discharge of her powers,
 7  rights and duties under the amended order, including
 8  securing control of and protecting the assets -- and
 9  I'll give you all a copy of this -- granted subject to
10  the following limitations.
11       And that is No. 1, the employment of legal
12  counsel is solely related to providing legal advice.
13  It does not extend to prepare pleadings, reports or
14  writing letters on the receiver's behalf without prior
15  court approval.  It does not extend to, quote unquote,
16  representation of the receiver before this court.
17       I don't frankly think the receiver needs any
18  representation, and I would, quite frankly, far prefer
19  to hear directly from Ms. Uecker herself.  And I
20  consulted several outside resources.  I'm sure you're
21  familiar with them.  There's a Laffey matrix that's put
22  together.  There are some other resources that the
23  court has access to.
24       And ultimately, and also based on my own 20
25  years of experience, the last two of which has been
```

###### Page 26

1  whether you're trying to tell me, Mr. Disston, that
2  these Bay Area Trading Call Teks Security, City Brand
3  Media, are all assets belonging to CallSocket?
4       MR. DISSTON:  Some of them certainly are in
5  that counsel indicated that what happens when investors
6  release the funds from escrow to the limited
7  partnership, that is the entity that they are investing
8  in, it then goes to San Francisco Regional Center.  It
9  is then used by San Francisco Regional Center to pay
10 expenses of some of these entities.
11      And so in the accounting that Mr. Tate is
12 preparing for the court, there's a tracking of all of
13 the funds from the time they come from the investor,
14 where they go, when they go to San Francisco Regional
15 Center, and then where they're invested by San
16 Francisco Regional Center.
17      MR. LEVINE:  Your Honor, we have slightly
18 different view of this.
19      THE COURT:  Okay.  I'm not interested in all of
20 that right now, quite frankly.  What I am interested in
21 is whether I'm going to close down the call center
22 today or next week or whenever.
23      MR. HUCKINS:  Let's deal with the values.  The
24 receiver has got her own opinions on the values of the
25 property.

###### Page 27

1       THE COURT:  Excellent.  That's what I was going
2  to ask you to do.  Do you have it with you?
3       MS. Uecker:  Yes.
4       MR. HUCKINS:  Do you mind if she brings it up?
5       THE COURT:  Has everybody seen this?  You can't
6  talk to me.
7       MR. DISSTON:  I have not.
8       THE COURT:  I'm going to read it out loud.  So
9  what do you base these numbers on?
10      MS. UECKER:  This is from a broker opinion of
11 value from Colliers International Brokerage.
12      THE COURT:  Is it just over the phone?
13      MS. UECKER:  No, I have them written.  I didn't
14 have them all today, but I called my office.
15      THE COURT:  Tribune building could be worth
16 between 22 and 24.  It thinks the Duffwin Theatre could
17 be worth between 10.2 and 10.8.  It thinks the 17th
18 Street property, which I think is the Community Bank
19 could be worth between 7.2 and 7.5, and the 20th Street
20 property, what's that?
21      MS. UECKER:  That's the warehouse.
22      THE COURT:  That's not part of us.  That's part
23 of the Berkeley thing.  So I don't know if I can -- one
24 of the things we have to address here is the limit of
25 my jurisdiction.  So what I'm looking at here is if I

###### Page 28

1  just take the averages, I've got 23, 10.5, and I have
2  got 7.35, so if we rely upon those numbers, then you
3  might not have been so far off the mark in terms of the
4  gross value.  It could be as much as 41 million dollars
5  gross.  Now, who has the number of what the total loans
6  are, off the top of their head?
7       MR. HUCKINS:  The debt on the Tribune Tower we
8  talked to lender's counsel this week and they said --
9       THE COURT:  Hold on.  Let me get my paper so I
10 can write it down.  The Tribune Tower debt right now is
11 how much?
12      MR. HUCKINS:  They said 9.9 million dollars.
13      THE COURT:  That's the number I used.
14      MR. HUCKINS:  And they said that was a soaking
15 wet number, so I'm assuming that's the high end.  And I
16 believe the cross-collateralized loan on the Duffwin
17 and the Broadway buildings is 6.2 million.
18      THE COURT:  Okay.  I think I used 6.3, but
19 let's just double-check here.  Okay.  So they brought
20 that down.  So 6.2 on Duffwin.  So that means we owe
21 16.1.  We've got we've got 16.1, so that means we might
22 have as much equity as 24.9.  Okay.  Well, that's a
23 whole lot better than 15.
24      MR. DISSTON:  And then there's 8 --
25      THE COURT:  Right.  But let me explain that

###### Page 29

1  problem as I went over this, Mr. Disston.  If I were an
2  investor sitting someplace else in the world and I
3  invested in CallSocket II, and I found out that I
4  have -- I gave my $500,000 and my 500,000 and all
5  that's left of it right now, it's hard because of the
6  way they did that, 7, 17.7, and we owe 6.2 and 5 -- and
7  so if we just separate that out and we talk about
8  CallSocket II, I would think that the 9.5 in equity
9  they might have is all mine.
10      And since we raised 15.5, we're at a loss
11 already of 6 million in CallSocket II.  So I'm still
12 not going to get my whole 500,000 grand back.  But I
13 would not be happy if I did not get back -- have you
14 got your calculator -- my 1/31, since there were 31
15 investors, my 1/31 of the 9.5 there is to be had.  Do
16 you see what I'm saying?
17      So here's where I had this real problem and
18 this is where my jurisdictional problem comes because I
19 don't have a complaint on file.  I don't know if the
20 purpose of this whole lawsuit is just to get you an
21 accounting.
22      I don't know yet if the purpose of this lawsuit
23 is to liquidate the assets and return to the investors
24 what they originally invested.  I don't even know if
25 Mr. Young was an investor in terms of actually